753 P.2d 1314

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Kevin SUTPHIN, Defendant-Appellant.**

·No. 17211.

Supreme Court of New Mexico.

May 2, 1988.

Rubin, Katz & Kepler, Asenath M. Kepler, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Elizabeth Major, Katherine Zinn, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

STOWERS, Justice.

Defendant-appellant Kevin Sutphin was found guilty by a jury of first degree murder and tampering with evidence. He was sentenced to a term of life and to eighteen months; both sentences to be served concurrently. It is from this judgment of conviction that defendant now appeals. We affirm.

On October 18, 1985, at "lock down" time in the New Mexico penitentiary in Santa Fe, Charles Franklin, an inmate, was found unconscious in his cell located within the protective custody unit. A corrections officer noticed him lying on his bunk covered with a bloody blanket. Defendant Sutphin and codefendant Clifford Hoffman were also temporarily housed in the protective custody unit. A second corrections officer noticed blood on defendant's forearms and a pinkish-colored towel in his cell, and other items which he knew belonged to Franklin. Defendant's bloody clothes were later found in a trash can. Franklin's autopsy revealed five large lacerations on the right side of his head which resulted in his death; but any one of the blows to his head would have rendered him unconscious.

Defendant and two others, Clifford Hoffman and David Gray, were charged with the first degree murder of Charles Franklin, conspiracy to commit murder and tampering with evidence. Codefendant Gray, who had earlier been paroled, had not been apprehended prior to trial.

Testimony was presented at trial that defendant and Franklin owed each other money as a result of gambling losses, and they argued about the amount of the debt owed. Defendant testified that on the night of October 18, he was in Franklin's cell when he noticed that Franklin was holding a small pipe in one hand. Fearful that Franklin would attack him, defendant jumped on him as Franklin started to fall, and straddled him on Franklin's bunk; defendant proceeded to grab the hand that held the pipe and hit Franklin on his head with it. Defendant further testified that Franklin then pulled from under the pillow a larger pipe, but before Franklin had time to struggle, defendant grabbed a pipe and repeatedly hit Franklin with it in the head. Codefendant Hoffman observed the incident, pulled defendant off Franklin and urged defendant to leave Franklin's cell. At trial, defendant claimed that he hit Franklin in self-defense.

At the conclusion of the state's case, the court granted Hoffman's motion for a directed verdict. Thereafter, the jury found defendant guilty of first degree murder and tampering with evidence.

Defendant raises the following issues on appeal:

1. The trial court erred in failing to permit defendant to exercise his full number of peremptory challenges.

2. The trial court erred in removing for cause two jurors who retracted their initial statements about the death penalty.

3. The trial court erred in denying a mistrial.

4. The evidence at trial was insufficient to sustain a conviction of first degree murder.

We discuss these issues seriatim.

### 1. *Peremptory Challenges.*

■ Defendant argues that he was denied due process of law because the trial court failed to permit him to exercise the full number of peremptory challenges to which he would have been entitled had he been tried separately and not jointly. SCRA 1986, 5–606(D)(1)(a) and (2) provides:

(1) The state and the defense in each criminal case tried to a jury in the district court shall be entitled to peremptory challenges of jurors as follows:

(a) if the offense charged is punishable by death or life imprisonment, the defense shall be allowed twelve challenges and the state shall be allowed eight challenges.

(2) When two or more persons are jointly tried, two additional challenges shall be allowed to the defense and to the state for each additional defendant. When two or more defendants are jointly tried and cannot agree by whom the peremptory challenges shall be exercised, they shall be exercised in the manner prescribed by the court.

Under the rule, defendant and codefendant were allowed a total of fourteen challenges. Defendant contends, however, that he had a due process right to twelve challenges for himself. We do not agree.

■ There is no constitutional right, either federal or state, which affords defendant peremptory challenges. The only right guaranteed is the right to a fair trial. U.S. Const. amend. VI; N.M. Const. art. II, §§ 14 & 18. The number of challenges to be afforded a defendant is a privilege properly controlled by a court rule. *See, e.g., State v. Nelson,* 18 Wash.App. 161, 566 P.2d 984 (1977); Annotation, *Jury: Number of Peremptory Challenges Allowed in Criminal Case, Where There Are Two or More Defendants Tried Together,* 21 A.L.R.3d 725 (1968). "The privilege must be taken with the limitations placed upon the manner of its exercise." *Stilson v. United States,* 250 U.S. 583, 587, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919). Multiple defendants have no right to more peremptory challenges than given them by the rule, provided they are given a fair trial by an impartial jury. *See id.* at 586, 40 S.Ct. at 29.

Defendant relies on *State v. Sevin,* 243 La. 1023, 150 So.2d 1 (1963) to support his contention that he should have been granted additional peremptory challenges. This case is distinguishable. In *Sevin,* the right of a defendant to peremptory challenges was guaranteed by the Louisiana Constitution and the number of such challenges was fixed by statute to twelve for each defendant whether tried separately or jointly. Thus, the court therein held that the failure to afford *each defendant* the full twelve challenges to which he was entitled deprived each one of a substantial right. *Sevin,* 243 La. at 1023, 150 So.2d at 1 (emphasis added).

Defendant's exercise of his peremptory challenges in the instant case did not contravene the due process clause of either the United States or New Mexico Constitutions. And, as previously noted, neither constitution prescribes as part of the right to trial by jury the granting of peremptory challenges to the accused. We are satisfied that the procedure followed in the trial of this case did not deny or impair defendant's constitutional right to a fair trial by an impartial jury.

### 2. *Removal for Cause.*

In his second point, defendant claims that he was denied due process and a fair

and impartial jury by the trial court's removal for cause of two prospective jurors who were opposed to the death penalty. Specifically, it is defendant's contention that although both jurors stated initially that the imposition of the death penalty would affect their deliberations, they later indicated that it would have no such effect.

In this case, the state was seeking the death penalty for the murder of Franklin. Defendant, however, was sentenced to a life term. During the selection of potential jurors, the court questioned each of them on his or her views of the death penalty. Juror Gallegos stated that he could not send anybody to the death penalty. Upon further questioning, he responded, "I've thought of it and I thought what if a person were to rape my wife or my mother or murder somebody close to me and I still couldn't vote for that." Juror Giron also stated under *voir dire* questioning by the court that she was opposed to the death penalty. In response to further questioning by the court whether there were any circumstances under which she could consider the death penalty, Giron stated, "The only way I would consider it is if a policeman was killed or an officer of the law." Thereupon, the trial court excused both jurors for cause.

In the recent decision of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed. 2d 841 (1985), the Supreme Court clarified its earlier decision in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968), and adopted the standard set forth in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), as the proper criteria for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. *Wainwright*, 469 U.S. at 424, 105 S.Ct. at 852. Under that standard, a juror is properly excludable for cause if the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* (quoting *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526). The Court

also noted that *Witherspoon* recognized the state's legitimate interest in excluding those jurors whose opposition to capital punishment would not allow them to view the proceedings impartially, and who therefore might frustrate the administration of a state's death penalty scheme. *Wainwright*, 469 U.S. at 416, 105 S.Ct. at 848.

■ It is within the trial court's discretion as to whether a prospective juror should be excused, since it is the trial judge who can best assess a juror's state of mind. *See State v. Cutnose*, 87 N.M. 300, 303, 532 P.2d 889, 892 (Ct.App.1975), *overruled on other grounds, State v. McCormack*, 100 N.M. 657, 674 P.2d 1117 (1984). A trial court's finding that a prospective juror would be unable to faithfully and impartially apply the law is based upon a judge's determination of that juror's demeanor and credibility. *Wainwright*, 469 U.S. at 426, 428, 105 S.Ct. at 853, 854. In exercising its discretion, however, the court must be zealous to protect the rights of the defendant. *Id.* at 430, 105 S.Ct. at 855.

■ Applying the standard set forth by the Supreme Court, the answers given by both juror Gallegos and juror Giron indicate that their ability to act as jurors in accordance with their instructions and their oaths would have been prevented or substantially impaired because of their strong opposition to the death penalty. While juror Gallegos stated that he could consider the death penalty, he also reiterated that he would not like it. Coupled with his previous statements voicing his strong opposition against capital punishment, juror Gallegos would not have been able to perform his duties as a juror. Juror Giron stated that the only time she could consider the death penalty was in the case of a killing of a police officer or other law enforcement officer. Since the instant case was not such a case, her ability to act in accordance with her oath and instructions would also have been prevented or substantially impaired because of her opposition to the death penalty. The trial judge had the

definite impression that each juror would be unable to faithfully and impartially apply the law. We will not disturb the trial court's decision absent a clear abuse of discretion or a manifest error. *Cutnose*, 87 N.M. at 303, 532 P.2d at 892. There was neither one in this case.

### 3. *Motion for a Mistrial.*

During cross-examination, defendant specifically questioned state's witness Mankiller about a concession from the district attorney's office to intercede on his behalf and preclude his return to Florida on other charges. Thereafter, on redirect examination, the prosecutor elicited from Mankiller his motive for testifying. Mankiller responded, "It's a personal feeling that this should not go unresolved. That the people or the individuals who did this should not be allowed the opportunity to do it to someone else." No objection was made by defendant to this testimony at the time it was given. Only after objecting to a question about homosexual activity at the penitentiary did defendant object to Mankiller's earlier response and move for a mistrial. Defendant stated that Mankiller's comment linked the defendant to a continuous course of violence in the penitentiary. The motion was denied. Following defendant's conviction, he renewed his motion for a mistrial, and stated also that the witness's comment was inherently prejudicial and impermissibly remarked on an element of premeditation without establishing the witness's personal knowledge. Defendant did not, however, request the trial court to admonish the jury in the alternative. Defendant argues that the trial court erred in failing to grant a mistrial.

■ Since the granting of a mistrial is discretionary with the trial court, we will not disturb the decision on appeal absent an abuse of discretion. *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983); *State v. Perrin*, 93 N.M. 73, 75, 596 P.2d 516, 518 (1979). Moreover, the power to declare a mistrial should be exercised with the greatest caution. *State v. Cas-*

*trillo*, 90 N.M. 608, 613, 566 P.2d 1146, 1151 (1977), *overruled on other grounds*, *State v. Wardlow*, 95 N.M. 585, 624 P.2d 527 (1981). "The trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision." *Transwestern Pipe Line Co. v. Yandell*, 69 N.M. 448, 460, 367 P.2d 938, 946 (1961). An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. *Simonson*, 100 N.M. at 301, 669 P.2d at 1096. In the instant case, we conclude that the trial court did not abuse its discretion by denying the motion for a mistrial.

■ Mankiller's statement that he was testifying to ensure that justice was to be done was not improper. It was elicited in response to defendant's attempts to discredit Mankiller's motives for testifying. Defendant has failed to show how the comment was prejudicial or how it connected him to any ongoing violence or crime at the penitentiary. The statement did not warrant the granting of a mistrial.

### 4. *Sufficiency of the Evidence.*

Finally, defendant argues that the evidence was insufficient to sustain a conviction of first degree murder; and, therefore, the trial court erred in denying his motions for a directed verdict of acquittal. It is defendant's contention that since evidence of a dispute over the gambling debt lends equal credence to a theory of guilt or innocence, a rational jury could not have found him guilty beyond a reasonable doubt. Defendant claims that a criminal conviction cannot be sustained if a reasonable hypothesis could be designed which is consistent with innocence. This, however, is not the test to determine sufficiency of the evidence and was rejected by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ An appellate court does not evaluate the evidence to determine whether

some hypothesis could be designed which is consistent with a finding of innocence. Instead, the test to determine the sufficiency of evidence in New Mexico, which is the same as enunciated in *Jackson*, is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. *State v. Montoya*, 101 N.M. 424, 425, 684 P.2d 510, 511 (1984). A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. *State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978); *State v. Gattis*, 105 N.M. 194, 200, 730 P.2d 497, 503 (Ct.App.1986). This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *State v. McGhee*, 103 N.M. 100, 104, 703 P.2d 877, 881 (1985). The fact finder may reject defendant's version of the incident. *State v. Vigil*, 87 N.M. 345, 350, 533 P.2d 578, 583 (1975). Where, however, a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal. *State v. Anaya*, 98 N.M. 211, 212, 647 P.2d 413, 414 (1982).

■ At trial, defendant did not deny killing Franklin. He claimed that the killing had been in self-defense. There were, however, no defensive wounds anywhere on Franklin's body to indicate that he attempted to protect himself from defendant. Defendant testified that Franklin did not struggle and his testimony to that effect was corroborated by codefendant Hoffman. After having beaten Franklin unconscious with the pipe, defendant covered Franklin's body with a blanket and proceeded to again hit him. Additional evidence was presented that defendant attempted to conceal his involvement in the killing by trying to dispose of his blood-stained clothing, by wiping blood spatters from the walls of Franklin's cell, and by stating to a correctional officer that he did not know what had happened to Franklin.

The jury was instructed on defendant's theory of self-defense, and although evidence conflicting with the state's theory of first degree murder was introduced, the jury resolved conflicts in the evidence and questions of credibility in favor of guilt, thereby rejecting defendant's version of the incident. We have reviewed the record and conclude there was sufficient evidence for the jury to find that defendant had the capacity to act with deliberate intent when he killed Franklin. A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the jury. *Lankford*, 92 N.M. at 2, 582 P.2d at 379.

The judgment of conviction is AFFIRMED.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.