This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                     **NO. 29,762**

**NICHOLAS TRUJILLO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant appeals his felony conviction for aggravated assault upon a peace officer (deadly weapon) and his misdemeanor conviction for resisting, evading, or obstructing an officer. The notice proposed to affirm, and Defendant filed a timely memorandum in opposition pursuant to a granted motion for extension of time. We remain unpersuaded by Defendant's arguments and therefore affirm.

**Sufficiency of the Evidence**

Defendant continues to argue that there was insufficient evidence to support his convictions for aggravated assault upon a peace officer (deadly weapon) and for resisting, evading, or obstructing an officer. **[DS 8; MIO 7]** Defendant refers to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), in support of his argument. **[MIO 10]**

We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). We do not re-weigh the evidence nor substitute our judgment for that of the factfinder, so long as there is

2

sufficient evidence to support the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

We first address Defendant's conviction for resisting, evading, or obstructing an officer. This conviction requires findings that Defendant intentionally fled and attempted to evade or evaded an officer with the knowledge that the officer was attempting to apprehend or arrest him. **[RP 33; MIO 8]** *See* NMSA 1978, § 30-22-1(B) (1981).

The facts provide that probation officers Barbara King and Gilbert Romero arrived at Defendant's house to conduct a "field call." **[DS 2; MIO 1-2]** Probation officer King testified that she observed an empty box of beer and an empty beer bottle on the kitchen counter. **[DS 3; MIO 2]** Probation officer Romero additionally testified that he observed Defendant's eyes to be red and watery. **[DS 5; MIO 4]** Based on the empty beer bottles and Defendant's appearance, the probation officers administered a breath test to Defendant. **[DS 3; MIO 2]** When the breath test results indicated the presence of alcohol **[DS 5; MIO 4]**, the probation officers testified that they told Defendant that he would be taken into custody based on his probation violation. **[DS 3, 5; MIO 3-4, 8]** According to probation officer King, Defendant responded, "[n]o, I'm not going." **[DS 3; MIO 3]** Probation officer King testified that probation officer Romero told Defendant numerous times to place his hands

behind his back **[DS 3]** and that probation officer King attempted to place Defendant into handcuffs by approaching him from the side and grabbing his wrist. **[DS 3, 5; MIO 3]**

In response to her attempt to handcuff Defendant, probation officer King testified that Defendant yanked his hand away from her **[DS 3; MIO 3]** and then stepped toward probation officer Romero in a "combative manner." **[DS 3; MIO 3, 9]** On cross-examination, probation officer King testified that, in her opinion, Defendant's stance indicated that he was going to resist arrest and that he was backing away from probation officer Romero. **[DS 4; MIO 3]** Probation officer Romero similarly testified that Defendant stated that he was not going to go to jail and "stepped back about a step or two in kind of like a combative stance," **[MIO 4, 9]** with one foot in front of the other and his arms to the side. **[DS 5; MIO 4]** In response to Defendant's stance, probation officer Romero pepper-sprayed Defendant. **[DS 3, 5; MIO 3-4]** The probation officers testified that Defendant then ran to the back yard, with probation officer Romero in pursuit. **[DS 3, 5; MIO 3]**

We hold that the foregoing facts support Defendant's conviction for resisting, evading, or obstructing an officer. *See State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as that evidence that a reasonable person would consider adequate to support a defendant's conviction). In

short, the jury could reasonably view the foregoing evidence to be such that the probation officers were acting in the lawful discharge of their duties and that Defendant, with the knowledge that officers were attempting to arrest and apprehend him, fled and attempted to evade the officers.

We next address Defendant's conviction for aggravated assault upon a peace officer (deadly weapon). This conviction requires findings that Defendant unlawfully assaulted or struck at a peace officer with a deadly weapon while the officer was in the lawful discharge of the officer's duties. **[RP 34; MIO 8]** *See* NMSA 1978, § 30-22-22(A)(1) (1971).

The facts provide that after running to the back yard while being pursued by probation officer Romero, Defendant got into his truck and begin to back out of the driveway. **[DS 5; MIO 3, 5]** Probation officer Romero testified that one of the truck's windows was partially open **[DS 5; MIO 3, 5]** and that he yelled for Defendant to stop. **[DS 5; MIO 5]** Probation officer Romero further testified that Defendant's truck accelerated as it was exiting the driveway **[DS 5; MIO 5]** and that he had to jump against his car **[DS 6; MIO 5]** as Defendant continued to back out of the driveway even though he was yelling for Defendant to stop. **[DS 6; MIO 5]** Probation officer Romero testified that he was afraid that he was going to get run over and forced into traffic on nearby River Road or that his legs would be pinned against

his car. **[DS 6; MIO 5, 9]** Consistent with the foregoing testimony, probation officer King testified that she saw Defendant's truck back out of the narrow driveway at an increasingly high rate of speed and almost hit probation officer Romero. **[DS 3; MIO 3]** Probation officer King further testified that probation officer Romero was forced to jump onto the trunk of his probation and parole vehicle to avoid being hit by Defendant's truck. **[DS 3; MIO 3]**

We hold that the foregoing facts support Defendant's conviction for aggravated assault upon a peace officer (deadly weapon). *See State v. Sparks*, 102 N.M. at 320, 694 P.2d at 1385 (defining substantial evidence as that evidence that a reasonable person would consider adequate to support a defendant's conviction). In this regard, we believe that a jury could reasonably view the foregoing evidence to be such that probation officer Romero was in the lawful discharge of his duties when Defendant unlawfully assaulted him by almost running into him with his truck, which under these circumstances was used as a deadly weapon.

In assessing the sufficiency of evidence for Defendant's convictions, we recognize evidence that the probation officers were engaged to each other and lived together **[DS 3, 4; MIO 5]**, and understand Defendant to argue that this suggests that their testimony was not credible because "they . . . each had an opportunity to hear each other's version of the events." **[DS 3, 4; MIO 5]** It was a matter for the jury,

6

however, to assess the credibility of the probation officers. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the factfinder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lies). Moreover, although Defendant asserts that he did not have a "combative stance" and that use of the pepper spray was unwarranted **[DS 6]**, it was the jury's prerogative to weigh the testimony of the witnesses and conclude that probation officer Romero reasonably viewed Defendant's stance as threatening, thereby meriting use of the pepper spray.

Lastly, we acknowledge the testimony of Defendant's friend, witness Terry Saiz, which indicates that Defendant backed out of the driveway because probation officer Romero was attempting to mace him through the cracked window **[DS 7; MIO 6-7, 9]**, and that probation officer Romero was not at risk of being hit by Defendant. **[DS 7-8; MIO 7, 9]** The jury, however, as factfinder could reasonably disbelieve this version of the events. *See State v. Foster*, 1999-NMSC-007, ¶ 42, 126 N.M. 646, 974 P.2d 140 (recognizing that it is up to the jury to weigh any contradictory evidence); *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319 (holding that the factfinder may reject defendant's version of events).

**Ineffective Assistance of Counsel**

Defendant continues to argue that his trial counsel was ineffective. **[DS 8;**

**MIO 10]** Defendant again refers to *Franklin* and *Boyer* in support of his argument.

**[DS 9; MIO 11]** Our review of the facts and record proper gives no indication that counsel's performance fell below that of a reasonably competent attorney or that Defendant was prejudiced by any deficient performance. *See State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (providing that it is the defendant's burden to establish a prima facie case of ineffective assistance of counsel). Whether or not Defendant had prior dealings with officers **[MIO 11]** is not a matter of record; nonetheless, trial counsel's decision to not cross-examine officers about any prior dealings with Defendant **[MIO 11]** is a matter of trial strategy that we will not second guess. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (expressing a "preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel"); *see also Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (stating that "[o]n appeal, we will not second guess the trial strategy and tactics of the defense counsel" (internal quotation marks and citation omitted)). Because the presumption of competency of counsel, *see State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127, has not been overcome, we affirm.

Based on the foregoing discussion, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**ROBERT E. ROBLES, Judge**

_____

**LINDA M. VANZI, Judge**