This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. NO. 28,791

**CHRISTINE PENMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Christine Penman (Defendant) appeals her conviction of embezzlement under NMSA 1978, Section 30-16-8 (2007). Defendant raises issues regarding the sufficiency of the evidence, the dismissal of a juror prior to voir dire, and the failure of the State to disclose the existence of a recording of a police interview with Defendant. We reverse based on our conclusion that the evidence was insufficient to support the conviction. As a result, we do not address Defendant's arguments regarding the juror and the recording.

**I.      BACKGROUND**

The State presented two witnesses: Officer David Karst, who investigated the incident, and Ms. Virginia Dearth, who manages the store at issue and was Defendant's boss. Ms. Dearth explained the store's protocol for handling money. During the day, cashiers deposit money in a safe drop whenever their drawers exceed $100. When it is time to deposit money, the cashier places it in a bag, records the amount in a "drop log," and puts the bag in a slot in the drop safe. Only the manager (Ms. Dearth) and the assistant manager (Defendant, at the time of the incident) have access to the safe. At the beginning of each day, the manager on duty performs the daily deposit. First, all of the cash, checks, and money orders from the previous day are removed from the drop safe. Ms. Dearth testified that the manager then counts this money and enters the result into a computer.

2

Officer Karst explained a slightly different procedure. Karst testified that Defendant indicated to him that the manager enters into the computer an amount for each item in the safe and that the computer calculates the total. The manager also writes this total into the daily sheet log. The manager then prepares a deposit slip with the same number and deposits the money and deposit slip at the bank. Part of the manager's job is to check the computer total against the number on the deposit slip. No evidence was introduced as to total sales as reflected by the registers or the amounts on the drop slips cashiers recorded when they made drops to the safe.

The deposit log, deposit slip, and computer printout of the manually entered numbers relating to August 17, 2007, were all entered into evidence. The computer printout showed a figure of $9622.50 cash. The deposit log contained a handwritten entry by Defendant that indicated $8622.50, but the eight had apparently been written over a nine (or vice versa). The deposit slip indicated $8622.50. The deposit log also indicated that on the following day the bank confirmed the deposit. It is not clear, however, whether this would have referred to the number before or after the write-over. The entry for August 17 was made by Defendant. The deposit log also contained a write-over on the August 20, 2007, entry that was made by Ms. Dearth. The only other evidence that the money might have existed came from the following exchange during the redirect of Ms. Dearth:

State: If one makes an addition or subtraction error in the cash, what[ is] probably going to show on the computer printout the next day?

Ms. Dearth: It[ is] going to show you over or short.

State: So, let[us] say, I make a mistake by $1000 for instance, and I put that wrong amount on the deposit slip. What[ is] going to show on the next day's computer printout?

Ms. Dearth: It[ is] going to show that we're $1000 short.

State: And, in this particular instance, did it?

Ms. Dearth: No.

State: So the money was physically gone, would that be a fair assessment?

Ms. Dearth: Yes.

Officer Karst indicated that Defendant's demeanor was "hollow," and that he was surprised that she had not acted "shocked" at the accusations against her. The officer testified that Defendant had told him that she counted the money twice: the first time she counted the money, she obtained a result of $9622.50; however, the second time, she calculated $8622.50. The officer testified that Defendant offered no explanation for this discrepancy and that Defendant stated that she did not notice the discrepancy until later.

## II.    DISCUSSION

Defendant argues that there was not sufficient evidence to support her conviction because the State did not present evidence to show that the $1000 Defendant was convicted of embezzling ever existed. The State appears to argue that Defendant's failure to claim she had made a mistake proves that she did not make a mistake. The State also argues that any mistake would have appeared on the printout the following day.

"[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

Our standard of review regarding sufficiency of the evidence is extremely deferential. This is a result of our respect for "the jury's fundamental role as

4

fact[]finder in our system of justice." *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted). However, against this deference we must balance "our own responsibility to ascertain whether there was sufficient evidence for any reasoning fact[]finder to conclude beyond a reasonable doubt that there was evidence establishing [the d]efendant's guilt[,]" *id.* ¶ 5, in order to fulfill our "duty to assure that the basis of a conviction is not mere speculation." *Id.* ¶ 19 (internal quotation marks and citation omitted).

Jury instruction number 4 set forth the elements that the State was required to prove to the jury beyond a reasonable doubt. These elements were:

1. The [D]efendant was entrusted with depositing daily deposits for Sundial Corporation including $1,000.00;

2. The [D]efendant converted this $1000.00 to the [D]efendant's own use. "Converting something to one's own use" means keeping another's property rather than returning it, or using another's property for one's own purpose rather than for the purpose intended by the owner.

3. At the time the [D]efendant converted the $1,000.00, the [D]efendant fraudulently intended to deprive the owner of the owner's property. "Fraudulently intended" means intended to deceive or cheat;

4. This happened in New Mexico on or about the 17th day of August, 2007.

As we understand Defendant's argument, Defendant challenges only that the State did not prove the existence of the $1000. We therefore limit our review to element

5

one: whether the State proved that Defendant was entrusted with $1000. We read this element to require that the State prove that $9622.50 was dropped into the safe, of which Defendant converted $1000 and deposited $8622.50.

Although the State may prove elements using only circumstantial evidence, it may not hypothesize that an item exists in order to prove an element using evidence that that item was never found. For example, in *State v. Duran*, the defendant was convicted of murdering a woman by stabbing her repeatedly. 2006-NMSC-035, ¶¶ 1, 3, 140 N.M. 94, 140 P.3d 515. In addition, he was convicted of tampering with evidence, apparently because police were unable to find either the murder weapon or any bloody clothing. *See id.* ¶ 13. The Supreme Court reversed the tampering conviction because it was not supported by substantial evidence. *Id.* ¶ 16. The Court was first careful to note that such a charge could be proven using only circumstantial evidence; however, such evidence still had to prove an affirmative act of tampering. *Id.* ¶ 13. Reviewing the evidence under the deferential standard afforded to jury verdicts, the Court observed that "we have no evidence of an overt act to destroy or hide any knife or blood stained clothing, *if such clothing did in fact exist.*" *Id.* ¶ 15 (emphasis added). In other words, failure to find the knife, which circumstantial evidence indicated existed, did not prove that the defendant had hidden it, and failure

6

to find the clothes was meaningless when nothing in evidence suggested such clothes even existed.

The State presented no direct evidence that the $1000 existed. Instead, the State relied on three pieces of circumstantial evidence. First, the State introduced evidence that Defendant typed $9622.50 (or amounts adding up to $9622.50) into the computer but recorded and deposited only $8622.50. No rational jury could conclude that the $1000 existed based on this discrepancy alone. Second, the State introduced two computer printouts containing the $9622.50 number based on Defendant's manual entries. The printouts also contained a column labeled "Cash Over/Sht" showing what might be a $71.88 shortage on August 17 and a $5.24 shortage on August 18. In fact, every day on the printout contains either a shortage or an overage of up to $100. No evidence was introduced to explain the meaning of this column, how it was calculated, or how it was entered into the computer. In particular, no evidence showed that the column was computed based on a reliable count of money in the cash registers or drop logs. Taken together, these facts still could not lead a reasoning jury to conclude that the $1000 existed.

The State's best evidence is Ms. Dearth's testimony that a data entry mistake would have resulted in an overage or shortage. On redirect, the State framed the following hypothetical: "So, let [us] say, I make a mistake . . . [w]hat[ is] going to

7

show on the next day's computer printout?" Ms. Dearth responded that the printout would show a shortage. But Ms. Dearth did not explain the overage/shortage column on Exhibits 2 and 6, or why and how mistakes would show up in that column on the next day or on any day. Nor did she explain why this column always showed an overage or shortage. Critically, she did not explain whether this column took into account data–such as the cash register totals–that was tied not to manually entry, but instead to an independent indicator of how much money was physically present. The jury was left to speculate as to what columns are added or subtracted to what other columns on the exhibits to produce this number. No combination of columns, additions, or subtractions that this Court could find makes the numbers on the printouts balance. The overage/shortage column, at least on the record before us, is inscrutable.

Nevertheless, based on a hypothetical that assumed a mistake had been made, the State led Ms. Dearth to agree that, since the report did not indicate a $1000 shortage on the following day, "the money was physically gone." Ms. Dearth's response to this leading hypotheticals is not evidence that the money existed and, without more, could not be accepted by a rational juror as proof that the $1000 existed. Indeed, her testimony only makes sense if one assumes that the

8

overage/shortage column was tied to an accurate count of the money that was deposited. But this assumption is not supported by the record.

As in *Duran*, the State's case requires the jury to assume that certain evidence existed before an inference of guilt can be made. However, also like *Duran*, the State did not sufficiently prove the existence of that evidence. Instead, the jury was required to infer that the $1000 existed based on the unexplained value in the overage/shortage column. Since the State did not introduce evidence, such as the drop receipts or cash register totals, to show that the $1000 existed, this line of reasoning is only possible if the jury speculates that the value in this column somehow reflected the amount of money deposited.

We are not alone in our concern that the State did not meet its burden. During the discussion of Defendant's motion for a directed verdict of acquittal, the district court repeatedly asked the State what evidence it had presented that $1000 ever existed. Additionally, the jury submitted questions to the judge. Several of these questions were directed to evidence that would have established the existence of the $1000 such as the cash register balances and the drop bag receipts. The judge instructed the jury that it would "have to rely on the evidence presented at trial." Although we do not consider these factors in reaching our decision, they serve to

highlight the fact that the shortcomings in the State's case were evident to all parties involved.

**III.    CONCLUSION**

For the foregoing reasons, we reverse Defendant's conviction.

**IT IS SO ORDERED.**

_____
MICHAEL D. BUSTAMANTE, Judge

**WE CONCUR:**

_____
CELIA FOY CASTILLO, Chief Judge

_____
JAMES J. WECHSLER, Judge