This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                 **NO. 32,811**

**BILLY MACKEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**GARCIA, Judge.**

{1} Defendant appeals from his convictions for one count of trafficking a controlled substance by possession with intent to distribute and one count of tampering with evidence. [DS 4; MIO 1; RP 105, 107] This Court issued a calendar notice proposing to affirm. Defendant filed a memorandum in opposition, which this Court has duly considered. We remain unpersuaded by Defendant's arguments and therefore affirm.

In his docketing statement, Defendant argued that there was insufficient evidence to prove that the substance found by the drug task force could be directly connected to him. [DS 4] Although it seemed like Defendant was only appealing his conviction for trafficking crack cocaine, this Court's calendar notice addressed all three of Defendant's convictions: (1) trafficking a controlled substance by possession with intent to distribute; (2) tampering with evidence; and (3) possession of marijuana or synthetic cannabinoids. We proposed to affirm all of Defendant's convictions.

In his memorandum in opposition, Defendant has clarified that he is appealing the first two convictions, but he is not appealing his conviction for possession of marijuana or synthetic cannabinoids. [MIO 1; RP 106]

**Trafficking a Controlled Substance by Possession with Intent to Distribute**

Defendant continues to argue that there was insufficient evidence to support his conviction for trafficking crack cocaine by possession with intent to distribute because the State failed to prove that "(1) he possessed the cocaine at issue and that (2) he

intended to transfer the cocaine to another person." [MIO 8] As we explained in detail in our calendar notice, there was sufficient evidence to support the jury's determination that Defendant was in possession of crack cocaine [CN 3-6], he knew the substance was crack cocaine or he believed it to be crack cocaine [CN 6-7], and he intended to transfer it to another on June 24, 2011. [CN 6-7]

Defendant does not raise any new legal arguments or facts in response to our notice. *See State v. Ibarra*, 1993-NMCA-040, ¶ 11, 116 N.M. 486, 864 P.2d 302 ("A party opposing summary disposition is required to come forward and specifically point out errors in fact and/or law."). Instead, Defendant asserts that a rational juror could not have found each element of trafficking beyond a reasonable doubt. [MIO 6]

It is "an appellate court's duty on review of a criminal conviction to determine whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt." *State v. Garcia*, 1992-NMSC-048, ¶ 27, 114 N.M. 269, 837 P.2d 862. The application of this standard, however, "does not involve substituting the appellate court's judgment for that of the jury in deciding the reasonable-doubt question[.]" *Id. ¶ 27.* Similarly, this standard does not require that we consider the "merit of evidence that may have supported a verdict to the contrary." *State v. Vigil*, 1990-NMSC-066, ¶ 6, 110 N.M. 254, 794 P.2d 728.

3

Defendant asserts that, even though Agent Leos testified that he saw Defendant "make a motion with what appeared to be an object inside the kitchen area[,]" Agent Leos was outside the residence when he made that observation and he could not testify to what the object was or whether Defendant was moving an object at all. [MIO 8] Additionally, Defendant claims that the packages of crack cocaine found in the trash can were large enough that Agent Leos should have been able to see them if Defendant was actually handling them when Agent Leos observed him. [MIO 8; DS 5]

For the reasons discussed in our calendar notice, we conclude that there was sufficient evidence to support the jury's determination that Defendant possessed the crack cocaine at issue. *See State v. Sutphin*, 1988-NMSC-031, ¶ 23, 107 N.M. 126, 753 P.2d 1314 ("A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the jury."); *see also State v. Anaya*, 1982-NMSC-073, ¶ 4, 98 N.M. 211, 647 P.2d 413 ("[W]here a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal.").

Defendant also asserts that, even if the State proved that he possessed cocaine, the State failed to establish that he intended to transfer it. [MIO 9-10] Defendant claims that his mere presence in the residence, his possession of "a bundle of cash" that he gave to another occupant in the house, second-hand reports that he was selling

4

drugs from the house, and his request that officers not search the house without a warrant, were not sufficient to prove that he intended to transfer cocaine to another. [MIO 3, 9-10]

In addition to this evidence, the record reflects that officers had been observing the house after receiving complaints of crack cocaine trafficking from that residence, Agent Leos had purchased crack cocaine from Defendant from that house in the past, and upon officers' arrival on June 24, 2011, the officers observed a female drive up to the house, go inside the house, and within one minute, return to her vehicle and leave. [DS 2, 3-4; RP 16, 18] Agent Whitzel attempted to speak to the female, but she avoided him and sped off. [DS 2; RP 16] Shortly thereafter, Agent Leos went to the front porch and spoke to Defendant, who appeared to be very nervous and started trembling. [DS 2-3; RP 16] At that time, Defendant pulled out a large amount of money from his pocket and handed it to another male in the house. [MIO 3; DS 2-3; RP 16]

We conclude that there was sufficient evidence to support the jury's determination that Defendant intended to transfer crack cocaine to another. Accordingly, we affirm his conviction for trafficking a controlled substance by possession with intent to distribute.

**Tampering with Evidence**

Defendant argues that there was insufficient evidence to prove that he tampered with evidence. [MIO 10-12] Defendant continues to argue that, because Agent Leos could not testify to the nature of the object Defendant was moving, there was insufficient evidence to show that Defendant had moved the cocaine that was later found in the trash can. [MIO 11] Defendant further argues that even if he had placed the packages of cocaine in the trash can, there was insufficient evidence to prove that Defendant did so to evade apprehension, prosecution, or conviction. [MIO 11]

The district court instructed the jury that in order to find Defendant guilty of tampering with evidence, the State had to prove beyond a reasonable doubt that Defendant "hid or placed cocaine" with the intent to prevent his "apprehension, prosecution, or conviction" and this happened in New Mexico on or about June 24, 2011. [RP 90] We conclude that the State presented substantial evidence supporting all elements of the crime.

Agent Leos testified that, on July 24, 2011, he observed Defendant standing at the front doorway of the house, turn around, and walk back inside the house into the kitchen area. [MIO 2-3; DS 2] Agent Leos continued to observe Defendant, who remained within Agent Leos' view, and Agent Leos saw Defendant make "a furtive movement as if in an attempt to conceal an object." [MIO 3; DS 2] Agent Leos

6

testified that Defendant "bent down and appeared to place something off to the right, at a downward angle." [MIO 3; DS 2]

Agent Leos went to the front porch, identified himself, and informed Defendant that he had received complaints of crack cocaine trafficking. [MIO 3; DS 2] While talking to Agent Leos, Defendant retrieved a "bundle of cash" from his front pocket and gave it to a man sitting on a couch in the house. [MIO 3; DS 2-3] Agent Leos asked Defendant to surrender all crack cocaine in his possession, but Defendant denied having any crack cocaine. [MIO 3; DS 3]

After Agent Leos obtained a search warrant for the house, he searched the kitchen area. [MIO 4; DS 3] Agent Leos observed a trash can in the area, which contained a paper sack and a twelve-pack with several beer bottles. [DS 3; RP 17] Underneath those items, there were two baggies containing white rock and powder-like substance, which were later tested and confirmed to be crack cocaine. [MIO 4; DS 3] Although Defendant claimed the cocaine was not his, he admitted that he knew the cocaine was in the house. [MIO 4; DS 3]

We conclude this evidence satisfies each of the aforementioned elements of tampering with evidence. *See State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (providing that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citation omitted)).

7

The jury could reasonably infer that Defendant saw Agent Leos, Defendant knew the cocaine was in the house, and Defendant did not want Agent Leos to find the cocaine, so he hid the cocaine in the trash can underneath other objects.

This case is similar to *State v. Delgado*, 2009-NMCA-061, 146 N.M. 402, 210 P.3d 828, *overruled on other grounds by State v. Aragon*, 2010-NMSC-008, ¶ 19, 147 N.M. 474, 225 P.3d 1280. In *Delgado*, two police officers observed the defendant bending down behind a wooden fence. 2009-NMCA-061, ¶ 2. One of the officers called out to the defendant, the defendant stood up, looked at the officers, and quickly walked away toward a nearby storage shed. *Id.* The officer lost sight of the defendant briefly. *Id.* Then, the defendant turned around and started walking back toward the officers. *Id.* The officer questioned the defendant about what he had thrown because, "based on his body movements, she believed that he had disposed of something." *Id.* ¶ 3. A third officer arrived on scene and found a white baggie containing a white powdery substance in front of the shed. *Id.* The substance tested positive for cocaine. *Id.* ¶¶ 3-5. After the baggie was located, the defendant put his hands behind his back and turned around. *Id.* ¶ 3. This Court concluded that these facts constituted sufficient evidence to support the defendant's tampering conviction because the evidence was found and officers testified about the defendant's actions linking him to disposing the evidence. *Id.* ¶¶ 24-25.

In the present case, we are not persuaded by Defendant's argument that even if he placed the cocaine packages in the trash can, there was insufficient evidence that he did so to evade apprehension, prosecution, or conviction. [MIO 11] It was reasonable for the jury to infer that Defendant hid the cocaine to prevent his apprehension, prosecution, or conviction. *See State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192 (explaining that intent to prevent apprehension, prosecution or conviction is "often inferred from an overt act of the defendant").

Therefore, we conclude that there was sufficient evidence to support Defendant's conviction for tampering with evidence.

**Conclusion**

For the reasons stated above and in this Court's notice of proposed disposition, we affirm.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**M. MONICA ZAMORA, Judge**