This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41579**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CHASTITY N. CARSON a/k/a CHASTITY CARSON a/k/a CHASTITY NICOLE CARSON a/k/a CHASTITY NICOLE PARSONS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Court Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Defendant Chastity Carson was convicted of reckless child abuse with great bodily harm, following a jury trial. On appeal, Defendant argues (1) there was insufficient evidence to support her conviction, and (2) the district court erred by excluding defense expert testimony. We affirm.

## BACKGROUND

**{2}** Defendant was indicted for reckless child abuse with great bodily harm after her daughter suffered severe and life-altering brain injuries while in Defendant's care. The victim (E.N.) is the child of Defendant and David Navarro (David). A few days after E.N.'s birth, Defendant took E.N. to a "newborn" check-up appointment, and the doctor did not note any health concerns with E.N. The doctor spoke with Defendant about safety recommendations for her newborn, recommending not co-sleeping with E.N. and instructing her on the dangerousness of shaking E.N. if she became colicky.

**{3}** When E.N. was three months old she began steadily crying and vomiting for several days, which led to Defendant having to syringe-feed food to E.N. Roughly a week and a half later, Defendant testified that while she was feeding E.N. with a syringe on her living room couch, E.N. fell off the couch and onto the hardwood floor. Defendant testified that E.N. seemed normal after the fall and appeared to have no marks or bruises that were visible to her or to David.

**{4}** A few days later, E.N. was crying nonstop and her leg began "ticking." Two days later, Defendant and David took E.N. to the emergency room at the University of New Mexico Hospital (UNMH), and after a series of tests E.N. was transferred to the Pediatric Intensive Care Unit (PICU). Dr. Gloria Lopez-Hernandez treated E.N. for seizures, a brain bleed, and cerebral edema while she was in the PICU. Dr. James Botros, a pediatric neurosurgeon, evaluated E.N. and performed both a CT scan and an MRI that revealed E.N. had swelling in her brain caused by blood clots between the brain and its outer covering. E.N. was also seen by a pediatric ophthalmologist, Dr. Arup Das, in the PICU. Dr. Das found that E.N. had bilateral extensive retinal hemorrhages, a diagnosis that is consistent with nonaccidental head trauma.

**{5}** Dr. Lopez-Hernandez found E.N.'s symptoms to be consistent with nonaccidental head trauma and referred E.N. to be seen by the Child Abuse Response Team (CART). Dr. Leslie Strickler, a child abuse pediatrician, reviewed E.N.'s records and spoke with Defendant and David about E.N.'s injuries. After hearing Defendant's explanation as to what happened with E.N., Dr. Strickler explained to Defendant and David that E.N.'s injuries would result in lifelong disabilities because her brain was so damaged. Dr. Strickler's findings led her to conclude that E.N.'s injuries were caused by abusive head trauma (AHT), formerly referred to as shaken baby syndrome. Dr. Strickler also concluded that E.N. suffered from "medical neglect" due to Defendant not bringing E.N. in sooner.

**{6}** While E.N. was being evaluated in the PICU, Defendant and David were separately interviewed by Albuquerque Police Department (APD) Officer Anthony Suarez. After his interview with Defendant, Officer Suarez referred the case to APD's Crimes Against Children Unit (CACU) and also contacted New Mexico's Children, Youth, and Families Department (CYFD), recommending emergency custody of E.N. Following an investigation by CACU, Defendant was arrested and later indicted for reckless child abuse with great bodily harm.

**{7}** At trial, the State presented expert testimony from Drs. Botros, Das, Lopez-Hernandez, and Strickler regarding the severity of the injuries to E.N. and the likely cause of those injuries. The State filed a motion to exclude the expert testimony of Defendant's designated expert, Dr. Eunice Cordoba, who treated E.N. roughly a year and a half after she was admitted to the PICU for her injuries, citing to answers in her pretrial interviews regarding child abuse and AHT. After Defendant filed a response to the State's motion to exclude Dr. Cordoba's testimony, the district court held a hearing to determine if Dr. Cordoba was qualified to give an expert opinion.

**{8}** The district court determined that Dr. Cordoba was not qualified to testify as an expert witness for the defense but could testify as a fact witness. Dr. Cordoba did not testify at trial, and Defendant was convicted of child abuse with great bodily harm. This appeal followed.

## DISCUSSION

### I. The State Presented Sufficient Evidence to Convict Defendant of Reckless Child Abuse

**{9}** Defendant argues that the State's evidence was insufficient to sustain her conviction of reckless child abuse, asserting that the State did not prove beyond a reasonable doubt that E.N.'s injuries were caused by Defendant's shaking. We disagree.

**{10}** "The sufficiency of the evidence is reviewed pursuant to a substantial evidence standard." *State v. Treadway*, 2006-NMSC-008, ¶ 7, 139 N.M. 167, 130 P.3d 746. We must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M, 711, 998 P.2d 176. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "[A] reviewing court will not second-guess the jury's decision concerning the credibility of witnesses, reweigh the evidence, or substitute its judgment for that of the jury." *State v. Lucero*, 1994-NMCA-129, ¶ 10, 118 N.M. 696, 884 P.2d 1175.

**{11}** To convict Defendant of reckless child abuse resulting in bodily harm, the jury was instructed, in relevant part, that it had to find beyond a reasonable doubt that Defendant "shook or shook and impacted [E.N.]" *See* UJI 14-615(1) NMRA. Defendant argues that there was no evidence that she shook E.N., as she denied it and David testified to never seeing Defendant shake E.N. Relying on *State v. Consaul*, 2014-NMSC-030, ¶ 72, 323 P.3d 850, Defendant argues that relying on medical opinion alone is insufficient to prove culpability beyond a reasonable doubt and that additional facts

are necessary to link the actual conduct of a defendant to the harm caused to a victim. Defendant's reliance on *Consaul* is misplaced.

**{12}** In *Consaul*, our Supreme Court took issue with the prosecution's reliance on medical expert testimony to support its theory that the defendant suffocated the child. *Id.* ¶¶ 58-73. The Court determined that the state failed to prove causation for criminally negligent child abuse because the state's medical experts testified that the defendant's actions of swaddling and placing the child face down on a pillow would not have caused his brain injuries, and that the differential diagnosis testimony in that case did not provide sufficient proof beyond a reasonable doubt that the defendant intentionally suffocated the child. *Id.* ¶¶ 43-49, 61-73.

**{13}** The Court provided guidance for reviewing courts, stating that should the prosecution rely solely on medical expert testimony, "it must go beyond the mere probable causation required for admissibility, which alone is really nothing more than establishment of a preponderance. The medical testimony should establish for the fact[-]finder, the trial court, and reviewing courts why the expert opinions are sufficient in themselves to establish guilt beyond a reasonable doubt." *Id.* ¶ 73. The Court also recognized that "[w]hile proof beyond a reasonable doubt is not required for admissibility of an opinion, it is essential to support a jury's findings of guilt." *Id.* ¶ 72. The Court ruled in *Consaul* that there was not substantial evidence of the defendant's guilt because the medical testimony presented by the prosecution fell short of establishing proof beyond a reasonable doubt and there was no other evidence of the defendant's guilt. *Id.* The same is not true here.

**{14}** As stated, the State here offered testimony of four expert witness physicians at trial. Dr. Botros testified at trial that because of the nature of the injuries to E.N.'s brain and eyes, along with the fact that E.N. had no bruising or fractures to her skull, a short fall from a couch "would be unlikely to explain" E.N.'s injuries. Dr. Botros could not conclusively say what caused E.N.'s injuries, but testified that he was trained to spot signs of abuse in infants.

**{15}** Dr. Das testified at trial that E.N. suffered from several retinal hemorrhages, which are rare in cases of accidental head trauma and inconsistent with what Defendant said to have happened to E.N. Dr. Das stated that when he saw E.N. there were no signs of external damage to her eyes, such as bruising, which is typically consistent with accidental trauma. Further, Dr. Das testified that E.N. was either suffering from local damage to her eye or intracranial pressure and deduced from the retinal hemorrhages as well as the lack of external damage that E.N.'s symptoms were consistent with intracranial pressure. Dr. Das acknowledged that while the hemorrhages could be caused by birth trauma, such hemorrhages usually resolve within a month of birth. Dr. Das ruled out other potential causes of E.N.'s injuries, such as cancer or blood disorders, and concluded that while he could not conclusively say what caused E.N.'s injuries, he diagnosed her as suffering from nonaccidental head trauma.

**{16}** Dr. Lopez-Hernandez testified at trial that she treated E.N. in the PICU for seizures, a brain bleed, and cerebral edema. Dr. Lopez-Hernandez stated that while she was not the one to diagnose what could have caused E.N.'s injuries, she was suspicious that it was nonaccidental head trauma and determined it best to refer E.N. to CART. Dr. Strickler testified that she reviewed E.N.'s medical records and concluded that E.N. would suffer from lifelong disabilities because of the severity of her brain damage. Dr. Strickler testified that normally when a child falls on their head, there are bruises or bumps; however, E.N. had no bruises or bumps when she was seen. Dr. Strickler also testified that E.N.'s injuries were not caused by an isolated event, but likely occurred over several incidents. Dr. Strickler diagnosed E.N. with AHT and medical neglect. Dr. Strickler explained to the jury that AHT is recognized as the most common cause of head trauma to infants, citing several studies.

**{17}** In the case before us, the State presented extensive expert medical testimony by doctors who treated E.N.'s injuries. Each doctor described in detail to the jury their process of determining that E.N. suffered from nonaccidental head trauma, explaining why they concluded that E.N.'s injuries were likely not the result of her falling from the couch. Each doctor offered an opinion on causation to a reasonable degree of medical probability, with Dr. Strickler opining to a reasonable degree of medical probability that E.N.'s injuries were a result of AHT. *See id.* ¶ 73 ("Medical testimony of this type, as a matter of evidentiary foundation, should describe in detail the methodology utilized first to 'rule-in' possible causes and then to 'rule-out' all but one. Based on that process of elimination, described in detail to the jury, a doctor then should be able to offer an opinion on causation to a reasonable degree of medical probability which satisfies a minimal standard for admissibility.").

**{18}** Further, beyond the expert testimony offered by the State, the jury heard additional evidence of Defendant's guilt, including that Defendant delayed seeking medical help, despite E.N. being in apparent distress, and that when law enforcement initially interviewed Defendant about E.N.'s condition, she said it was her fault and then explained that she had dropped E.N. from a couch.

**{19}** On this record, we conclude there to exist sufficient evidence for the jury to have found Defendant guilty of reckless child abuse resulting in great bodily harm. The jury heard expert testimony by the doctors who treated E.N. and found their rationales and credibility in favor of guilt, rejecting Defendant's assertion that she never shook E.N. and that E.N.'s injuries were caused by her falling off the couch. A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the jury. *See Lucero*, 1994-NMCA-129, ¶ 10.

## II. The District Court Did Not Err by Excluding Dr. Cordoba's Expert Testimony

**{20}** Defendant asserts on appeal that the district court erred when it excluded expert witness testimony from Dr. Cordoba and therefore denied her right to present a credible defense. We disagree.

**{21}** We review evidentiary decisions by the district court for abuse of discretion. *See State v. Sanchez*, 2008-NMSC-066, ¶ 12, 145 N.M. 311, 198 P.3d 337 ("The district court has discretion to determine the admissibility of evidence, and we will not reverse the court's order absent an abuse of discretion."). "Trial courts have broad discretion in admitting expert testimony as long as the expert (1) is qualified, (2) provides testimony that will assist the trier of fact, and (3) provides testimony regarding scientific, technical, or other specialized knowledge with a reliable basis." *Consaul*, 2014-NMSC-030, ¶ 56 (internal quotation marks and citation omitted).

**{22}** Defendant designated Dr. Eunice Cordoba, a pediatrician, as her expert witness of pediatric medicine and neurology. The State moved to exclude the testimony of Dr. Cordoba, citing that she did not believe that AHT was a medical diagnosis, she had failed her neurology boards several times, she was not board certified in pediatrics, she was not a member of any professional organizations, and she could not cite any studies to support her notions denying AHT. The district court issued a written order to exclude Dr. Cordoba's expert witness testimony. In its order, the district court ruled that

> Cordoba is not an expert in the field of child abuse and her experience in neurology will not help the trier of fact to understand the evidence or to determine a fact in issue. Her conclusions about differential diagnoses that were not considered by CART are not based on scientific knowledge and her lack of experience in this arena make her unqualified to testify in any manner as to the cause of the injuries, differential diagnosis or to offer any opinion about the ultimate diagnosis of abusive head trauma. Dr. Cordoba may testify as a fact witness only.

**{23}** We are not persuaded by Defendant's argument for several reasons. First, we agree with the district court's determination that Dr. Cordoba is not qualified to be an expert witness of pediatric medicine and neurology in light of the absence of meaningful qualifications in these areas. *See* Rule 11-702 NMRA.

**{24}** Second, we agree with the district court's determination that Dr. Cordoba's opinion testimony would not have assisted the trier of fact, since her opinions were based on her limited interactions with E.N. and Defendant, which occurred approximately a year and a half after E.N. was treated in the hospital. That is, Dr. Cordoba's evaluation of E.N. and opinions were not founded on relevant facts related to E.N.'s injuries that are the basis for Defendant's conviction. *Cf. Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 48, 384 P.3d. 1098 ("One way to avoid speculative opinions is to require an expert's opinion to be based on or relate to the facts of the case.").

**{25}** Third, we agree with the district court's determination that Dr. Cordoba's testimony did not provide any scientific knowledge with a reliable foundation. *See* Rule 11-702; *see also Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 12, 149 N.M. 140, 245 P.3d 585 ("[T]he district court is required to act as a gatekeeper to ensure that an expert's testimony rests on both a reliable foundation and

is relevant to the task at hand so that speculative and unfounded opinions do not reach the jury." (internal quotation marks and citation omitted)). That is, Dr. Cordoba provided no reliable medical basis to support her contention that AHT was not the proper diagnosis for E.N., citing no medical literature or past experience.

{26}   In sum, the district court did not abuse its discretion in excluding Dr. Cordoba as an expert witness.

**CONCLUSION**

{27}   For the foregoing reasons, we affirm.

{28}   **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**JENNIFER L. ATTREP, Judge**