**Certiorari Granted, No. 31,733, June 23, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2009-NMCA-061**

**Filing Date:    May 14, 2009**

**Docket No. 27,192**

**STATE OF NEW MEXICO,**

**Plaintiff-Appellee,**

**v.**

**PABLO DELGADO,**

**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Silvia Cano-Garcia, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**   Defendant Pablo Delgado appeals his convictions of possession of cocaine and tampering with evidence.  With regard to the possession charge, a forensic chemist from the New Mexico Department of Public Safety Crime Lab (Crime Lab) testified concerning the analyses of another chemist from the Crime Lab based on the reports of his test results.  The district court received one of the reports in evidence as a business record.  We conclude that

1

the report was properly received as a business record and that the chemist's testimony did not violate Defendant's right of confrontation. We further conclude that there was sufficient evidence to convict Defendant of both charges. We therefore affirm.

## BACKGROUND

**{2}** In their bike patrol on June 18, 2004, at approximately 10:00 p.m., Officers Irma Palos and Wavie Brown of the Las Cruces Police Department observed Defendant in the vicinity of mobile homes. He was bent down behind a wooden fence. Officer Palos called out to Defendant. Defendant stood up, looked at the officers, and walked quickly away from them toward a nearby storage shed. Officer Palos called out to Defendant to stop. She lost sight of Defendant for "a quick moment" as Defendant walked toward the shed. Defendant then turned around and started walking back to the officers.

**{3}** When Officer Palos asked Defendant what he was doing, Defendant responded that he was "drinking a beer and talking to his wife on the phone." Officer Palos testified, however, that the beer can that Defendant was holding was not open, and there was no one on Defendant's cell phone. Officer Palos asked Defendant what he had thrown because, based on his body movements, she believed that he had disposed of something. Defendant repeated that he was drinking a beer and talking with his wife on the phone. Officer Cindy McCants, who had arrived at the scene, found a baggie with a white powdery substance in front of the shed. Officer McCants gave the baggie to Officer Brown, who showed it to Officer Palos. At that point, without provocation, Defendant put his hands behind his back and turned around. He asked if he could make a phone call. The officers then detained him. A field test of the substance indicated that it was cocaine.

## CHEMIST'S REPORT

**{4}** At trial, Danielle Elenbaas, a forensic chemist at the Crime Lab, testified that the Crime Lab is accredited by an accrediting body that inspects the lab every five years to ensure that it uses current procedures, validated methods, and good science. She stated that Eric Young, another forensic chemist at the Crime Lab, tested the substance and prepared a report of his analysis. Ms. Elenbaas testified as the records custodian of Mr. Young's report. She identified the report and described the routine process by which it was created. She stated that only she and Mr. Young were authorized to generate such reports on controlled substances. She further stated that the reports record the results of the tests the chemists performed and that, after the chemists approve the reports, they provide them to the submitting agency.

**{5}** The State moved for the admission of Mr. Young's report as a business record. The district court received the report in evidence over Defendant's objection. Ms. Elenbaas testified that the report showed that Mr. Young identified the substance as 1.53 grams of cocaine.

**{6}** On appeal, Defendant argues that the district court erred in receiving the Crime Lab report in evidence. "We review the admission of evidence under an exception to the hearsay rule with deference to the trial court's discretion; we review to determine whether there has been an abuse of discretion." *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486, *aff'd*, 2008-NMSC-044, 144 N.M. 483, 188 P.3d 1234. We will not conclude that the district court "abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Mora*, 2003-NMCA-072, ¶ 8, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted).

**{7}** The district court admitted Mr. Young's laboratory report into evidence under the business records exception to the hearsay rule. *See* Rule 11-803(F) NMRA. Under the business records exception to the hearsay rule, the following documents are admissible:

> A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness[.]

*Id.* The rule further provides that the exception is not to be applied if the "source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* Although the district court expressly received Mr. Young's laboratory report in evidence under the business records exception to the hearsay rule, Defendant primarily focuses his argument on appeal on the public records exception to the hearsay rule, claiming that the two exceptions are analogous. The public records exception to the hearsay rule permits the admission of "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies" that set forth "the activities of the office or agency" or "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." Rule 11-803(H)(1)-(2).

**{8}** In *State v. Christian*, 119 N.M. 776, 778, 895 P.2d 676, 678 (Ct. App. 1995), *limited on other grounds by State v. Ruiz*, 120 N.M. 534, 537, 903 P.2d 845, 848 (Ct. App. 1995), this Court considered the admissibility of a blood alcohol report created by an employee of the Scientific Laboratory Division of the New Mexico Department of Health (SLD) under both the business records and public records exceptions to the hearsay rule. First, we concluded that the report was properly admitted into evidence under the business records exception. *Id.* at 780-81, 895 P.2d at 680-81. We reasoned that, even though the report in question was made in the furtherance of the prosecution of the defendant, the testimony given at the trial indicated that the report was nonetheless made no "differently from any of the thousands of other reports similarly situated." *Id.* at 780, 895 P.2d at 680. Second, we rejected the defendant's argument that the admission of the report was improper under the

public records exception. *Id.* at 782, 895 P.2d at 682. We explained that the defendant's argument that the preparer of the report was "law enforcement personnel" for the purposes of Rule 11-803(H)(2) failed because the laboratory in which the report was created was "not an arm of law enforcement." *Christian*, 119 N.M. at 781, 895 P.2d at 681. We further noted that "even documents prepared by the state police crime laboratory can satisfy the public records exception where an adequate foundation for reliability is laid." *Id.*

{9} We read *Christian* to be controlling in this case. Defendant offers no argument against the admission of the report as a business record based on the plain language of Rule 11-803(F), and our review of the trial transcript reveals that, as in *Christian*, a sufficient foundation for that exception was laid and that nothing elicited at trial indicated that Mr. Young's laboratory report was not trustworthy. *See Christian*, 119 N.M. at 780-81, 895 P.2d at 680-81.

{10} Notwithstanding the admissibility of the laboratory report as a business record, Defendant argues that Mr. Young's laboratory report is inadmissible because Rule 11-803(H) does not permit the reports of law enforcement personnel to be admitted as public records. The crux of his argument is that the district court's admission of the report was reversible error because it "allow[ed] the State to prove its case through a report generated by a police agency during the investigation under the guise of an ordinary business record." We do not agree for two reasons.

{11} First, even if we were to accept Defendant's assertion that the Crime Lab is a "police agency," *Christian* states that "even documents prepared by the state police crime laboratory can satisfy the public records exception where an adequate foundation for reliability is laid." 119 N.M. at 781, 895 P.2d at 681. In reaching this conclusion, we explained the distinction drawn by some courts between "reports of police investigations which contain the kind of adversarial and subjective commentary often found in such documents" and documents "recording routine, objective observations, made as part of the everyday function of the preparing official or agency." *Id.* at 782, 895 P.2d at 682 (internal quotation marks and citation omitted). We adopted the reasoning allowing such routine, objective reports as evidence even though prepared by personnel associated with law enforcement. *Id.* Defendant offers no compelling argument that Mr. Young's laboratory report was not routinely or objectively prepared or that it was in any way unreliable. *See State v. Dedman*, 2004-NMSC-037, ¶ 44, 136 N.M. 561, 102 P.3d 628 (finding that the state met its burden of showing trustworthiness when there was no evidence that a blood alcohol report was prepared atypically).

{12} Second, in *Christian*, we also pointed out the consistency of the reasoning allowing as evidence such reports of routine, objective observations with existing New Mexico case law. This Court particularly noted our Supreme Court's observation in *State v. Linam*, 93 N.M. 307, 308, 600 P.2d 253, 254 (1979), that the purpose of excluding the reports of law enforcement personnel from admissibility under Rule 11-803(H) is to ensure that officers who engage in investigative and prosecutorial activities testify. *See Christian*, 119 N.M. at

4

782, 895 P.2d at 682. Defendant argues in this regard that Mr. Young's report falls within this category because the Crime Lab prepares such reports of controlled substances "to help law enforcement agencies investigate and prosecute cases." However, although Mr. Young's laboratory report was a part of the State's case, Mr. Young did not engage in investigative or prosecutorial activities. As Ms. Elenbaas testified, Mr. Young's responsibility as a forensic chemist at the Crime Lab with regard to the evidence in this case was to conduct an analysis and prepare a report following protocols that are reviewed by the Crime Lab's accrediting body. *See Dedman*, 2004-NMSC-037, ¶ 30 (holding that a process under which a report is prepared that is "routine, non-adversarial, and made to ensure an accurate measurement" indicated that the report was not investigative or prosecutorial). The district court did not abuse its discretion in admitting Mr. Young's laboratory report into evidence.

**RIGHT OF CONFRONTATION**

**{13}** Defendant additionally argues that the testimony of Ms. Elenbaas violated his rights under the United States and New Mexico constitutions to confront Mr. Young, who had conducted the drug analysis and prepared the report. Under *Crawford v. Washington*, 541 U.S. 36, 53-54, 68 (2004), the state may not introduce a testimonial statement against a criminal defendant at trial unless it establishes that the declarant is unavailable to testify at trial and that the defendant had the prior opportunity for cross-examination. Because the State in our case does not assert that it met these prerequisites of *Crawford*, the issue before us is solely whether Mr. Young's laboratory report was testimonial evidence.

**{14}** The Supreme Court expressly did not "spell out a comprehensive definition" of "testimonial" in *Crawford*, but it did indicate that the term did apply to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68; *see Davis v. Washington*, 547 U.S. 813, 817, 822 (2006) (considering a 911 call and statements made at a crime scene and holding that "[s]tatements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency"). As our Supreme Court pointed out in *Dedman*, the Supreme Court's "historical analysis indicates that the core concern is government officers who are prosecuting or investigating a crime, or interrogating or at least questioning a witness," and a Supreme Court footnote described "[i]nvolvement of government officers in the production of testimony with an eye toward trial" because of the "unique potential for prosecutorial abuse." *Dedman*, 2004-NMSC-037, ¶ 29 (alteration in original) (internal quotation marks and citation omitted).

**{15}** In *Dedman*, our Supreme Court addressed the issue of testimonial evidence with regard to a blood alcohol report generated by SLD. *Id.* ¶¶ 4, 30. It held that the SLD report was not testimonial for several reasons: (1) SLD personnel are not law enforcement, and the report was not investigative or prosecutorial; (2) even though SLD prepared the report for trial, the process was "routine, non-adversarial, and made to ensure an accurate

5

measurement"; (3) the government officer preparing the report was not preparing testimony for trial; and (4) a blood alcohol report "is very different from" the examples of testimonial evidence described in *Crawford*—"prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and statements taken during "police interrogations." *Id.* ¶ 30 (internal quotation marks and citation omitted).

**{16}** Defendant relies upon the difference between the Crime Lab and SLD to distinguish *Dedman* from this case. But the fact that Crime Lab chemists are employed by the Department of Public Safety as opposed to the Department of Health is not dispositive as it is only one factor that we must consider. Moreover, we do not ascribe it the significance that Defendant urges.

**{17}** Even though the Crime Lab chemists are employed by the Department of Public Safety, they do not perform the duties of law enforcement officers. *See* NMSA 1978, § 41-4-3(D) (2007) (describing the principal duties of a "law enforcement officer" under the Tort Claims Act as "to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes" (internal quotation marks omitted)). The Crime Lab chemists are not charged with the responsibility of investigating or prosecuting crime. They are under the inspection of an accrediting body, and they use standard operating procedures with validated methods and "good science" to analyze substances submitted to them and prepare their reports. Although chemists testify at trial and can reasonably expect that their reports will be used if there is a trial, their testimony and reports are significantly different from the testimonial evidence identified in *Crawford* as representing a confrontation problem. They are performing the responsibilities of their jobs, and their testing merely provides proof, or the absence of proof, of an element in a controlled substance case.

**{18}** We therefore conclude, based on our analysis of the factors expressed in *Dedman*, that Mr. Young's report was not testimonial evidence under *Crawford*. Following *Dedman*, we must then analyze the evidence as non-testimonial hearsay under *Ohio v. Roberts*, 448 U.S. 56 (1980), *abrogated on other grounds by Crawford*, 541 U.S. 36, to determine whether Defendant's confrontation rights were violated because he did not have the opportunity to cross-examine Mr. Young. *See Dedman*, 2004-NMSC-037, ¶¶ 32-34. There is no constitutional violation if the evidence has demonstrated reliability. *See id.* ¶ 37. Further, when evidence "falls within a firmly rooted hearsay exception," nothing else need be shown to establish reliability. *Roberts*, 448 U.S. at 66; *Dedman*, 2004-NMSC-037, ¶ 37. Mr. Young's report was admissible hearsay either as a business record or a public record. Both are firmly rooted exceptions to the hearsay rule. *Roberts*, 448 U.S. at 66 n.8; *Dedman*, 2004-NMSC-037, ¶ 37. There was no confrontation violation in this case.

**SUFFICIENCY OF THE EVIDENCE**

**{19}** Defendant further contends that the evidence was not sufficient to convict him of either possession of cocaine or tampering with evidence. We conduct our review for the

sufficiency of the evidence by viewing the evidence in the most permissible way that is favorable to the state. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We resolve all conflicts in the evidence and indulge all permissible inferences from the evidence in favor of the verdict. *Id.* We ascertain whether there was substantial evidence to enable any rational factfinder to find that the state established each element of the crime beyond a reasonable doubt. *Id.*; *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). The evidence may be direct or circumstantial. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

**Possession of Cocaine**

**{20}** The district court instructed the jury that, to convict Defendant of possession of cocaine, the jury was required to find that Defendant, on June 18, 2004, had cocaine in his possession and that he knew or believed it to be cocaine or some other drug or substance the possession of which is regulated or prohibited by law. *See* NMSA 1978, § 30-31-23(A) (2005). Because constructive possession constitutes possession, *see State v. Brietag*, 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct. App. 1989), the district court instructed the jury, without objection:

> A person is in possession of cocaine when he knows it is on his person or in his presence, and he exercises control over it.
>
> Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.
>
> Two or more people can have possession of a substance at the same time.
>
> A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

*See* UJI 14-3130 NMRA.

**{21}** There is sufficient evidence that Defendant had constructive possession of the cocaine that Officer McCants found in front of the shed on June 18, 2004. When the officers approached, Defendant was bent down behind a fence. He stood up, looked at the officers, and walked away from them at a quick pace toward the shed. He did not stop when Officer Palos called out to him. The officers lost sight of him for a moment before he walked back to the officers. Defendant then gave the officers an explanation about drinking a beer and talking on his cell phone that did not fit with the officers' observations. When the cocaine was found, he placed his hands behind his back and turned around without any request by the officers.

**{22}** The fact that Defendant did not speak English and Officer Palos may have called out to him in English is inconsequential. Even if Defendant did not understand the command,

7

the officers observed him stand up, look at them, and quickly walk toward the shed, where the cocaine was found. We are similarly unconvinced by Defendant's argument that he did not have exclusive control over the area and that there were others who lived in the area, including some present within ten to fifteen feet of the shed. This evidence was before the jury, and the jury nevertheless viewed the evidence differently from Defendant. *See Sutphin*, 107 N.M. at 131, 753 P.2d at 1319 (stating that we do not reweigh the evidence, "so long as there is sufficient evidence to support the verdict"). Based on all of the circumstances, there was substantial evidence to support Defendant's conviction for possession of cocaine. *See State v. Smith*, 100 N.M. 352, 354, 670 P.2d 963, 965 (Ct. App. 1983) (stating that knowledge can be inferred from circumstantial evidence), *abrogated on other grounds by State v. Watkins*, 2008-NMCA-060, 144 N.M. 66, 183 P.3d 951.

**Tampering with Evidence**

**{23}** "Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." NMSA 1978, § 30-22-5(A) (2003). The district court instructed the jury that, to find Defendant guilty of tampering with evidence, the State needed to prove beyond a reasonable doubt that on June 18, 2004, Defendant hid or placed cocaine, intending to prevent his apprehension, prosecution, or conviction.

**{24}** There is sufficient evidence to support the tampering with evidence conviction. After Defendant walked away from the officers, Officer Palos observed his body movements that to her appeared as if he had disposed of something. When she asked him what he had thrown, Defendant responded that he was drinking a beer and talking on the cell phone; a response that did not comport with Officer Palos' observations. The cocaine was located in the area where Defendant had been. Defendant then placed his hands behind his back and turned around. The jury could reasonably conclude that Officer Palos observed Defendant discard the later-located cocaine.

**{25}** Defendant's reference to our Supreme Court's statement in *State v. Duran*, 2006-NMSC-035, ¶ 13, 140 N.M. 94, 140 P.3d 515, misses the mark. In *Duran*, the Court stated that "[w]hile New Mexico has no case law indicating that a tampering with evidence charge cannot be based solely on circumstantial evidence, our cases upholding convictions for this charge involve some kind of direct evidence of tampering." *Id.* The evidence that was the subject of the tampering charge was never found. *Id.* ¶ 15. In contrast, in this case, not only was the evidence found, but the officers testified to Defendant's actions linking him to his disposing of the evidence.

**CONCLUSION**

**{26}** We affirm Defendant's convictions for possession of cocaine and tampering with evidence.

8

**{27}** IT IS SO ORDERED.

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**CELIA FOY CASTILLO, Judge**

**Topic Index for _State v. Delgado_, No. 27,192**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-PS | Possession |
| CL-TE | Tampering with Evidence |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-RT | Right to Confrontation |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-HR | Hearsay Evidence |
| EV-SC | Scientific Evidence & Daubert Standard |
| EV-SS | Substantial or Sufficient Evidence |
| EV-TM | Tampering with Evidence |