# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-059

Filing Date: August 19, 2021

No. A-1-CA-38218

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

SHANNON DWANE JACKSON,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Certiorari Denied, September 27, 2021, No. S-1-SC-38981. Released for Publication November 9, 2021.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**DUFFY, Judge.**

**{1}** The memorandum opinion filed on August 9, 2021, is hereby withdrawn and replaced with this opinion.

**{2}** Defendant Shannon Dwane Jackson appeals his convictions for trafficking of a controlled substance, contrary to NMSA 1978, Section 30-31-20 (2006); tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(B) (1981); and

possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). Defendant argues that (1) the State presented insufficient evidence to prove he tampered with evidence; (2) the district court erred in admitting evidence that Defendant owned a gun; (3) the district court erred in denying Defendant's motion for a mistrial based on a previously undisclosed supplemental police report that was discovered midtrial; and (4) the evidence found during the search of his person should have been suppressed as it was outside the scope of the search warrant. We reverse Defendant's conviction for tampering with evidence, but otherwise affirm.

**BACKGROUND**

**{3}** Police obtained a warrant to search Defendant's residence for narcotics. Officer Rafael Aguilar and Sergeant Waylon Rains of the Clovis Police Department arrived at Defendant's home to execute the warrant, but due to safety concerns, they chose to wait until Defendant exited his home. A short time later, the officers observed Defendant leave the house and get into the passenger side of a vehicle with a female driver.

**{4}** Officer Aguilar and Sergeant Rains followed the vehicle and observed it stop at another house that was known to be involved in narcotic dealings. Defendant went inside for approximately five minutes and then returned to the vehicle, whereupon it drove off. A short time later, Officer Aguilar and Sergeant Rains stopped the vehicle. Officer Aguilar approached the passenger side of the car and observed Defendant with a large amount of money on his lap. He asked Defendant to get out of the car and, as he did, Officer Aguilar observed a large baggie with smaller baggies in Defendant's pocket. Officer Aguilar attempted to restrain Defendant after he got out of the car. Defendant began to resist arrest and a struggle ensued. At this point, Defendant pulled the large baggie from the right pocket of his shorts and threw it to the female driver. After Defendant was restrained, Sergeant James Gurule, also with the Clovis Police Department, conducted a search of Defendant. He located two zip-lock bags containing $2,230 in cash. The officers also confiscated the bag Defendant had thrown into the car, which contained many smaller baggies of crack cocaine—sixty-three in total.

**{5}** After conducting the traffic stop, the officers proceeded to Defendant's residence to execute the search warrant. Officers discovered the following items in Defendant's home: a .380 caliber semi-automatic pistol, several small zip-lock baggies, several digital scales, and a brown bag with small zip-lock baggies inside. Following a jury trial, Defendant was convicted on all charges. He appeals.

**DISCUSSION**

**I.      Defendant's Conviction for Tampering With Evidence**

**{6}** Defendant first argues that there was insufficient evidence to support his conviction for tampering with evidence. Under the instruction given, the State had to prove that Defendant "threw baggies of crack[]cocaine into a vehicle" and "intended to

prevent, apprehension, prosecution, or conviction of himself for the crime of [t]rafficking of a [c]ontrolled [s]ubstance." Defendant claims that his act of throwing baggies of crack cocaine in plain view of multiple police officers does not constitute any of the prohibited acts listed in Section 30-22-5. The State concedes that there is insufficient evidence to sustain the tampering conviction. While we are not bound by the State's concession, we accept it here. *See State v. Montoya*, 2015-NMSC-010, ¶ 58, 345 P.3d 1056.

**{7}** The New Mexico Supreme Court has stated that the "tampering with evidence criminal statute, . . . [Section] 30-22-5 . . . , makes it a crime to hide or alter evidence of a crime." *State v. Radosevich*, 2018-NMSC-028, ¶ 1, 419 P.3d 176. The statute provides that "[t]ampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Section 30-22-5(A). As such, "[t]he tampering statute punishes those who try to frustrate the criminal justice system by obstructing access to evidence of a crime." *Radosevich*, 2018-NMSC-028, ¶ 10.

**{8}** Our courts have drawn a distinction between acts occurring in the presence of an officer and those that attempted to conceal evidence outside of the view of an officer. *Compare State v. Roybal*, 1992-NMCA-114, ¶¶ 7, 29, 115 N.M. 27, 846 P.2d 333 (holding that the evidence was insufficient to support the defendant's conviction for tampering where the defendant dropped some items from his hand to the ground as officers approached), *with State v. Delgado*, 2009-NMCA-061, ¶ 24, 146 N.M. 402, 210 P.3d 828 (holding that there was sufficient evidence to support a conviction for tampering where the police observed the defendant making suspicious movements, but could not directly see what the defendant was doing and later discovered evidence in the area), *overruled on other grounds by State v. Aragon*, 2010-NMSC-008, ¶ 19, 147 N.M. 474, 225 P.3d 1280; *and State v. Graham*, 2003-NMCA-127, ¶ 13, 134 N.M. 613, 81 P.3d 556 (holding that there was sufficient evidence to support the defendant's conviction for tampering where the defendant dropped evidence behind the seat in his truck so as to conceal it from the police), *rev'd on other grounds*, 2005-NMSC-004, 137 N.M. 197, 109 P.3d 285.

**{9}** Here, Defendant's actions plainly occurred in the presence of the police. The officers saw Defendant throw the baggie and were able to immediately recover it. The evidence was never concealed from the officers, and we therefore agree with the parties that Defendant's conviction for tampering with evidence is not supported by sufficient evidence.

## II. Admission of Evidence That Defendant Owned a Gun

**{10}** Defendant argues that the district court abused its discretion in admitting evidence of the gun found inside the residence, over Defendant's objection. Defendant claims that the gun evidence's "probative value was substantially outweighed by the risk of prejudice[,]" arguing that he was not armed at the time of his arrest and the State presented no evidence that the presence of a single handgun in the home made it more

likely that Defendant was trafficking drugs. *See* Rule 11-403 NMRA. The State responds that Defendant's "ownership of a gun was relevant to establishing that he was a drug dealer." At trial, Sergeant Rains testified that it is "common" for anyone involved in the drug trade to have a gun and Officer Aguilar testified that firearms and sales of narcotics "go hand in hand."

**{11}**    Assuming without deciding that the district court abused its discretion in admitting evidence of the gun, we conclude that any error was harmless. "When an error is preserved, we review for harmless error[.]" *State v. Astorga*, 2015-NMSC-007, ¶ 42, 343 P.3d 1245. "Absent a constitutional violation, we look to whether there is a reasonable probability that the error affected the verdict." *Id.* ¶ 43. "[The d]efendant bears the initial burden of demonstrating that he was prejudiced by the error." *Id.* "To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215.

**{12}**    Defendant argues that the gun evidence created the impression that Defendant was dangerous and that, in turn, encouraged the jury to convict him of trafficking a controlled substance rather than simple possession. The distinction between the two offenses turned on whether the jury found that Defendant intended to transfer the crack cocaine to another. The State presented evidence that Defendant was apprehended with sixty-three baggies of crack cocaine and more than $2,200 in cash on his person. The State also presented evidence that the quantity of crack cocaine found on Defendant and the way it was individually packaged indicated that the drugs were intended for sale to individuals. In addition, police found several digital scales and empty small baggies at Defendant's residence. In light of this and other evidence presented by the State at trial, we are doubtful that the admission of the gun evidence had any probable impact on the jury's deliberations regarding trafficking versus possession. Therefore, even if the district court erred in admitting the gun evidence, we hold that any error was harmless.

### III.    Defendant's Motion for a Mistrial

**{13}**    Defendant contends that the district court abused its discretion in denying his motion for a mistrial after learning, during trial, that the State had failed to disclose a supplemental police report. We review the district court's denial of a motion for mistrial for an abuse of discretion. *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016. "The district court abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citations omitted).

**{14}**    During cross-examination on the first day of trial, Sergeant Gurule testified that he had written a supplemental police report documenting Defendant's arrest. The report was not given to Defendant prior to trial, and he moved for a mistrial based on the omission. The State explained to the court that it, too, had not received Sergeant

Gurule's report before trial and did not know that the report existed. The State obtained the report and provided a copy of it to Defendant later that day. Before trial resumed the following day, the district court admonished the prosecution for failing to produce the supplemental police report. However, the district court found there was no prejudice to Defendant because there was nothing in the supplemental report that was exculpatory and the report was consistent with Sergeant Gurule's trial testimony. The district court stated that Defendant would be allowed to recall Sergeant Gurule and Sergeant Rains for further cross-examination.

{15}    Defendant argues that because more than four years had passed since the date of the incident and the trial, and because the State had repeatedly declared it was ready for trial, the "State should have known, and had the responsibility to know, that [Sergeant] Gurule's report existed and had never been turned over to the defense." Although Defendant concedes that there is a "lack of apparent prejudice" from the State's discovery violation, he argues that a mistrial would have been a way to enforce the State's discovery obligations. "When the [s]tate discovers additional evidence, Rule 5-505(A) [NMRA] requires prompt written notice be provided to a defendant." *State v. Smith*, 2016-NMSC-007, ¶ 25, 367 P.3d 420. "To enforce Rule 5-505(A) the trial court has a number of remedies at its disposal including granting a continuance, prohibiting a party from introducing the undisclosed material evidence, or entering any other order deemed appropriate." *Smith*, 2016-NMSC-007, ¶ 25. The rule gives a court broad discretion to fashion a remedy that it deems proper under the circumstances. *See* Rule 5-505(B).

{16}    In this case, the district court dealt with the failure to disclose by admonishing the prosecution and allowing Defendant to recall the officers for cross-examination. Defendant makes no argument as to why the district court's remedy was insufficient under the circumstances. Given that the supplemental report was merely cumulative and Defendant conceded that he was not prejudiced, we see no basis to conclude that the district court abused its discretion. *See State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25 (stating that "the mere showing of violation of a discovery order, without a showing of prejudice, is not grounds for sanctioning a party").

## IV.    Defendant's Motion to Suppress

{17}    Finally, Defendant argues that the district court should have suppressed the evidence found during the traffic stop because the warrant authorized only a search of his residence. He maintains that because the warrant did not include his name or description, the police had no justification to stop the vehicle.

{18}    Defendant moved to suppress the evidence obtained after the traffic stop on that basis. In response, the State argued that the traffic stop was supported by reasonable suspicion, citing *State v. Alderete*, 2011-NMCA-055, 149 N.M. 799, 255 P.3d 377. The district court found that there was reasonable suspicion for the stop based on the fact that the officers had a search warrant for Defendant's residence and their observations

while conducting surveillance on Defendant's residence, and therefore denied Defendant's motion to suppress.

**{19}** On review of a motion to suppress evidence, "[w]e review factual questions under a deferential substantial evidence standard, and we review the application of the law to the facts de novo." *Id.* ¶ 9. "In doing so, we review the facts in the light most favorable to the district court's factual findings so long as substantial evidence exists to support those findings." *Id.* (omission, internal quotation marks, and citation omitted).

**{20}** As the State noted below, this case is substantially similar to *Alderete*. There, officers had received a tip from a confidential informant that a house was being used as a stash house for large amounts of marijuana. *Id.* ¶ 2. The officers had previously received reliable information from the informant. *Id.* The officers conducted surveillance of the house throughout the week, and approximately four days in, they observed two men moving large boxes from the back of a pickup truck into the house. *Id.* The officers obtained a search warrant for the house. *Id.* Later that day, officers observed the defendant driving from the subject house and stopped the vehicle. *Id.* ¶ 4. During a subsequent inventory search of the vehicle, the officer observed two large cardboard boxes containing "small brick-like shaped items," which were later confirmed to be over one hundred bundles of marijuana. *Id.* ¶ 6.

**{21}** The defendant moved to suppress the drug evidence found in her car, arguing that the stop was pretextual and the real reason for the stop was to investigate her involvement in drug activity. *Id.* ¶ 1. This Court held that the officers had reasonable suspicion for the stop, noting that "the detectives in the present case who were observing the subject house had specific factual information regarding the residents' possible involvement in drug trafficking and therefore had reasonable suspicion to conduct an investigatory stop of [the d]efendant's vehicle to confirm or dispel their suspicions." *Id.* ¶ 18. As well, officers had a reliable tip from an informant, which was consistent with officers' own observations, the officers obtained a search warrant for the residence, and they witnessed the defendant leave the house in the car they later stopped. *Id.* ¶¶ 18-19. We stated that the detectives "could reasonably suspect that a large amount of drugs had been in the house that [the d]efendant had just left and that [the d]efendant could be transporting those drugs to an alternate location." *Id.* ¶ 19. And although "the detectives did not have any information regarding [the d]efendant herself, they had reasonable suspicion that the driver of the vehicle that left the garage, whoever that may have been, was involved in the drug activity they had observed throughout the course of their investigation, and they were permitted to make an investigatory stop to confirm or dispel their suspicions." *Id.* ¶ 20. Based on all of these considerations, we held that a stop for the purpose of investigating drug activity was supported by reasonable suspicion. *Id.*

**{22}** The same considerations are present in this case. The officers had obtained a search warrant to search Defendant's residence for narcotics. The affidavit attached to the search warrant detailed how an informant had relayed information for the past several weeks regarding drug trafficking at Defendant's house. The affidavit noted that

"[t]his informant has established their credibility and reliability by making not less than three controlled purchases of controlled substances" at the house. According to the affidavit, the informant had seen Defendant selling cocaine from the residence and had stated that Defendant conceals the cocaine on his person.

**{23}**     Prior to executing the search warrant, the officers conducted surveillance of the residence for approximately thirty to forty-five minutes. They watched as Defendant left the house with a woman, got into a car, and drove away. As they attempted to catch up with the vehicle, the officers testified that it stopped at another house known to be involved in narcotic dealings. Defendant entered this house and was inside for less than five minutes before returning to the vehicle. A short time later, the officers conducted the traffic stop.

**{24}**     Based on the totality of the circumstances, specific and articulable facts supported the officers' suspicion that Defendant was engaged in illegal activity. We affirm the district court's conclusion that the traffic stop was supported by reasonable suspicion.

**CONCLUSION**

**{25}**     For the foregoing reasons, we reverse Defendant's conviction for tampering with evidence, but otherwise affirm.

**{26}     IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**