This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41233**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHRISTOPHER LEE HEWITT,**

Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to the Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}** Defendant appeals his convictions for trafficking methamphetamine, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006), and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). [RP 235] On appeal, Defendant contends the State failed to prove tampering with evidence and argues that it was plain error for the district court to allow the investigating officer to testify as an expert without being qualified to do so. For the reasons that follow, we reject Defendant's assertions of error.

**{3}** Because this is an unpublished memorandum opinion written solely for the benefit of the parties and the parties are familiar with the relevant particulars, we omit a background section and proceed directly to the legal challenges. Where appropriate, we reference the factual and procedural history in our analysis.

**DISCUSSION**

**I.      Sufficiency of the Evidence Supporting Tampering**

**{4}** Defendant argues the State did not present evidence sufficient to prove he tampered with evidence. [BIC 7] "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (text only) (citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (text only) (citation omitted). "[A]ppellate courts do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (text only) (citation omitted)).

**{5}** Here, the jury was instructed that the State was required to prove beyond a reasonable doubt that (1) Defendant "placed or tossed the black case on the ground away from himself"; and (2) in doing so, Defendant "intended to prevent the apprehension, prosecution, or conviction of [himself] for the crime of trafficking or possessing methamphetamine."[1] [RP 202] "[I]n order for [a d]efendant's conviction on tampering with evidence to be upheld, there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively destroyed or hid physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515 (internal quotation marks omitted); *see also State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192

---

[1]The instruction also required that these events occurred in New Mexico on or about July 14, 2020—a fact that the parties do not dispute.

(explaining that intent to prevent apprehension, prosecution, or conviction is "often inferred from an overt act of the defendant").

**{6}** At trial, Farmington Police Department Officer Ahlgrim testified that he approached Defendant while investigating a stolen vehicle report. [BIC 2] While verifying the vehicle identification number, Officer Ahlgrim saw Defendant make what he characterized as a suspicious movement, and a short time later, found a small, black zip-up case on the ground. Defendant denied the case was his. [BIC 2] The case contained methamphetamine, empty bags, and a small scale. Upon observing the contents of the case, Officer Ahlgrim—suspecting Defendant had thrown the case— reviewed the video taken by his vehicle's dash camera. The State submitted the video into evidence; it showed Defendant removing the black case from his left pocket, passing it behind his back, and tossing it away from him. [AB 2-3] The case bounced off Defendant's car tire and landed near Defendant, and Defendant tried to scoot it farther away. [AB 3; BIC 3]

**{7}** These facts are sufficient, when viewed in the light most favorable to the State, to support Defendant's conviction for tampering with evidence. *See Slade*, 2014-NMCA-088, ¶ 13. The video showed Defendant tossing the case on the ground and later moving it farther away than it had initially landed. Defendant's denial that the case belonged to him and the video evidence disproving that statement is sufficient to allow the jury to infer that in tossing the case away, Defendant intended to avoid being apprehended for possessing methamphetamine. *See Silva*, 2008-NMSC-051, ¶ 18.

**{8}** Defendant argues, however, that the evidence cannot support a conviction for tampering with evidence because the evidence was not concealed; Defendant asserts his actions "facilitated" Officer Ahlgrim's investigation by making the "case plainly visible to, and easily retrieved by, [Officer] Ahlgrim" [BIC 9-10], and ultimately "resulted in the black case appearing in [Officer] Ahlgrim's plain view where it was easily recovered." [BIC 8] In making this argument, Defendant analogizes this case to *State v. Jackson*, 2021-NMCA-059, ¶¶ 9, 25, 497 P.3d 1208, in which this Court reversed a conviction for tampering with evidence based on insufficient evidence. In *Jackson*, the defendant threw baggies of cocaine while in plain view of multiple police officers. *Id.* ¶ 6. This Court emphasized that the tampering with evidence statute, which "'makes it a crime to hide or alter evidence of a crime,'" is intended to "'punish[] those who try to frustrate the criminal justice system by obstructing access to evidence of a crime.'" *Id.* ¶ 7 (quoting *State v. Radosevich*, 2018-NMSC-028, ¶¶ 1, 10, 419 P.3d 176). Then, relying on the distinction between "acts occurring in the presence of an officer and those that attempted to conceal evidence outside of the view of an officer," we concluded that because the officers saw the defendant throw the baggie and were able to immediately recover it, the evidence "was never concealed" and the defendant's conviction for tampering with evidence was not supported by sufficient evidence. *Id.* ¶¶ 8, 9.

**{9}** The factual distinctions between this case and *Jackson*, however, render Defendant's reliance on *Jackson* unpersuasive. Unlike in *Jackson*, where multiple officers saw the defendant attempt to dispose of the drugs, Officer Ahlgrim only

observed Defendant make a suspicious movement. Accordingly, the facts of this case are more akin to *State v. Delgado*, 2009-NMCA-061, ¶¶ 23-25, 146 N.M. 402, 210 P.3d 828, *overruled on other grounds by State v. Aragon*, 2010-NMSC-008, ¶ 19, 147 N.M. 474, 225 P.3d 1280. In *Delgado*, an officer called out to the defendant, causing the defendant to stand up, look at the officer, and quickly walk toward a storage shed in the opposite direction. *Id.* ¶ 2. The officer lost sight of the defendant momentarily while the defendant was walking away. *Id.* The officer observed that, "based on his body movements, [the officer] believed that [the defendant] had disposed of something." *Id.* ¶ 3; *see also id.* ¶ 24 ("[The officer] observed his body movements that to her appeared as if he had disposed of something."). When asked what he had thrown, the defendant gave a response that did not comport with the officer's observations of the defendant's movements. *Id.* A baggie of cocaine was later found in front of the shed. *Id.* The *Delgado* court concluded that the evidence was sufficient to support the tampering with evidence conviction. *Id.* Here, like the officer in *Delgado*, Officer Ahlgrim did not actually observe Defendant do anything with the evidence, but instead observed Defendant's movement and subsequently recovered the evidence. We are unpersuaded by Defendant's argument that the evidence was never concealed from Officer Ahlgrim.

**{10}** Insofar as we understand Defendant to argue that instructing the jury to determine whether Defendant "tossed" the case amounted to error [BIC 8; RB 3], we note Defendant did not proffer an alternate instruction or otherwise alert the district court to the perceived shortcomings in the instructions [AB 5]. *See State v. Garcia*, 2013-NMCA-005, ¶ 9, 294 P.3d 1256 (stating that the defendant failed to preserve challenge to jury instruction by failing to object to the instruction in the district court); Rule 5-608(D) NMRA (establishing that a claim of instructional error is preserved by objecting to the instruction before it is given). Though we may review unpreserved challenges to jury instructions for fundamental error, Defendant has made no attempt to argue fundamental error occurred here. [RB 3-4] *See State v. Stevens*, 2014-NMSC-011, ¶ 42, 323 P.3d 901 ("We review an unpreserved challenge to a jury instruction for fundamental error."). We therefore decline to consider Defendant's unpreserved argument. *See State v. Joanna V.*, 2003-NMCA-100, ¶ 10, 134 N.M. 232, 75 P.3d 832, *aff'd*, 2004-NMSC-024, 136 N.M. 40, 94 P.3d 783 (declining to review an issue on appeal where the issue was not preserved below and where counsel failed to argue any exception regarding the general public interest, fundamental error, or fundamental rights); *State v. Jason F.*, 1998-NMSC-010, ¶ 10, 135 N.M. 111, 957 P.2d 1145 (declining to review a party's unpreserved argument when counsel made no argument on appeal regarding the exceptions to the preservation requirement).

**{11}** Defendant also argues that the evidence is not sufficient to demonstrate he "placed" the case, as that term is used in the tampering with evidence statute, because he did not place it in a definite or particular location. [RP 202; RB 3] To support this argument, Defendant cites *State v. Roybal*, 1992-NMCA-114, ¶ 24, 115 N.M. 27, 846 P.2d 333. [BIC 9] In *Roybal*, this Court considered whether evidence that the defendant dropped heroin from his hands to the ground when the police announced themselves was sufficient to support his conviction for tampering with evidence. *Id.* ¶¶ 7, 29. Looking to cases from other jurisdictions—in which the defendants threw a bag toward a

waiting car, threw a bottle away from the police, and flushed things down a toilet—this Court noted that they all contained evidence that the perpetrators "actively sought to disrupt the investigatory process." *Id.* ¶¶ 25-27, 29. In concluding that the defendant's act of dropping the heroin did not support a conviction for tampering, the *Roybal* court noted the absence of intentionality in the defendant's action, reasoning that the defendant's actions "do not prove beyond a reasonable doubt that he formed a specific intent to thwart the officers." *Id.* ¶ 29. Furthermore, given "there [wa]s no evidence that he acted to 'place' the heroin in a particular location," *Roybal* also held that the tampering conviction was not supported by sufficient evidence "either of intent or of an act listed in the statute." *Id.* ¶ 29; *see also id.* ¶ 24 (stating that "[t]he word 'place' . . . indicates an act of putting evidence in a particular place").

**{12}**    Here, Defendant did not simply drop the case in an unspecific location or in a manner that could have been inadvert or unintentional. Instead, the evidence indicates Defendant removed the case from his pocket and tossed it toward the car. When it rebounded off the car, Defendant proceeded to try to move it farther away from him again. In addition, Defendant later denied that the case was his. This evidence demonstrates Defendant actively sought to disrupt the investigatory process and acted to put the case in a particular place, therefore making it sufficient to support Defendant's conviction for tampering with evidence.[2]

## II.    Admission of Officer Ahlgrim's Testimony

**{13}**    Defendant also argues that the district court erred in allowing Officer Ahlgrim to testify as an expert without being qualified to do so. [BIC 14-16] *See* Rule 11-702 NMRA ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact."). Because defense counsel did not object to this testimony at trial, we review for plain error. [BIC 16] *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056.

**{14}**    "Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157 (internal quotation marks and citation omitted). "[I]n determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *Montoya*, 2015-NMSC-010, ¶ 46 (omission, internal quotation marks, and citation omitted). Because the plain error rule "is an exception to the preservation requirement, we apply the rule sparingly and only when we have grave doubts about the

---

2Because we conclude that there was sufficient evidence to support Defendant's conviction for tampering as to having "placed" the case, we need not address Defendant's argument that "hiding" as contemplated by the statute would have been a more appropriate description of his conduct. [BIC 9-10] Furthermore, to the extent Defendant proffers a policy argument regarding the harsh penalties associated with a conviction for tampering with evidence [BIC 13-14], it is one more appropriately addressed by the Legislature. *Cf. State v. McDonald*, 2004-NMSC-033, ¶ 22, 136 N.M. 417, 99 P.3d 667 ("It is profoundly a matter for the [L]egislature to determine whether the agreement to commit a violent crime is to be treated the same as the underlying crime itself."); *Torres v. State*, 1995-NMSC-025, ¶ 10, 119 N.M. 609, 894 P.2d 386 ("[I]t is the particular domain of the [L]egislature, as the voice of the people, to make public policy.").

validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Muller*, 2022-NMCA-024, ¶ 43, 508 P.3d 960 (internal quotation marks and citation omitted).

**{15}**  Defendant argues that Officer Ahlgrim's testimony was expert opinion testimony and that the admission of such testimony without Officer Ahlgrim being qualified as an expert amounts to plain error. [BIC 14-26] The State acknowledges that at least some portion of Officer Ahlgrim's testimony was expert testimony under Rule 11-702. [BIC 14] The State argues, however, that admission of his testimony does not amount to plain error because the record contains sufficient foundational evidence establishing that Officer Ahlgrim was qualified to give the expert testimony. [AB 15] In response, Defendant continues to assert, without further explanation, that Officer Ahlgrim was unqualified to testify: "[Officer] Ahlgrim was not well-informed on the particulars of *narcotics transactions* and admitted as much at trial." [RB 9]

**{16}**  Officer Ahlgrim was a full-time police officer, employed by the Farmington Police Department for over nine years. He had recently attended a six-week training course in narcotics, as well as "numerous" department trainings and annual refresher courses. He also testified that during recent training, he had learned that the going rate for methamphetamine was approximately twenty dollars for 1.5 grams. [BIC 3] He testified that he trains dogs using narcotics on a weekly basis [7/21/2022 CD 2:14:30], has seen methamphetamine "countless times," and has had "a lot" of experience with narcotics. [AB 14]

**{17}**  According to Officer Ahlgrim, Defendant had a large amount of cash in his wallet, including sixteen twenty-dollar bills. [BIC 3] He also testified that the black case contained two small bags containing 1.5 and 1.39 grams of methamphetamine respectively, empty small bags, and a small scale. [BIC 2-3] In addition, Officer Ahlgrim testified that "in his experience, when you find somebody who's just dealing with a user, they have one little baggie with their person[al] amount of methamphetamine on them— it's not divvied up into similar weights along with a scale." [BIC 5] According to his testimony, the two separate baggies "were packaged separately at similar weights," and the presence of the scale meant that "the meth[amphetamine] is being weighed." [BIC 5] When questioned by defense counsel regarding the specifics of a narcotics transaction, Officer Ahlgrim freely admitted that he was a canine handler—not a narcotics agent— and had no firsthand experience buying or selling drugs. [BIC 3-4]

**{18}**  Defendant does not direct us to authority suggesting that an officer with experience similar to Officer Ahlgrim would be unqualified to testify as he did. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 ("[A]bsent cited authority to support an argument, we assume no such authority exists."). Instead, Defendant laments that Officer Ahlgrim did not have sufficient knowledge regarding narcotics transactions, and focuses much of his argument on the fact that Officer Ahlgrim was a canine handler rather than a narcotics agent. [BIC 15, 23; RB 8] Defendant does not, however, identify any authority that suggests only narcotics agents would qualify as experts to testify as

Officer Ahlgrim did in this case.[3] *See id.*; *see also State v. McDonald*, 1998-NMSC-034, ¶ 19, 126 N.M. 44, 966 P.2d 752 ("[N]o set criteria can be laid down to test an expert's qualifications." (alteration, internal quotation marks, and citation omitted)).

**{19}** Furthermore, insofar as Defendant's argument stems from the premise that Officer Ahlgrim did not discuss his training or experience with particularity so that his qualifications could be accurately assessed, Defendant is at least partly to blame for any such lack of detail in the testimony—Defendant neither objected at trial nor posed questions regarding the adequacy of Officer Ahlgrim's training or experience. *See State v. Martinez*, 2020-NMCA-043, ¶ 45, 472 P.3d 1241 (providing that plain error review may prove "an extremely difficult task" due to the failure to raise the claimed error at trial and the resulting lack of development in the record). We also note that deficiencies in Officer Ahlgrim's narcotics training and experience go not to the admissibility of his testimony but the weight the jury might give it—particularly in light of his willing acknowledgement that he was a canine handler and had no experience buying or selling drugs. [BIC 15] *See State v. Torrez*, 2009-NMSC-029, ¶ 18, 146 N.M. 331, 210 P.3d 228 (observing that perceived deficiencies in an expert's qualifications are "relevant to the weight accorded by the jury to the testimony and not to the testimony's admissibility" (text only) (citation omitted)). Accordingly, the record does not indicate that Officer Ahlgrim was clearly unqualified to testify as he did in this case. Defendant has therefore failed to establish that admission of Officer Ahlgrim's testimony constituted plain error. For these reasons, we affirm Defendant's convictions.

**{20} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**

---

3To the extent Defendant relies on out-of-jurisdiction case law to support his argument [BIC 19], we are unpersuaded. The cases cited are not precedential in New Mexico, and Defendant fails to meaningfully analyze such authority or analogize the facts therein to the facts at hand, providing only generalized assertions regarding the applicability of those citations to the instant case. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim); *cf. State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 28, 285 P.3d 622 (explaining that courts relying on jurisprudence from other jurisdictions must do so with caution and ensure that another court is not relying on language that is absent from our statutes or that serves a different purpose).